## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PIPEFITTERS' RETIREMENT FUND, LOCAL 597, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 22 C 594 |
| DIVERSIFIED GENERAL CONTRACTORS, INC., and MELVIN ARMSTRONG, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Plaintiffs Pipe Fitters' Retirement Fund, Local 597, Pipe Fitters' Welfare Fund, Local 597, Pipe Fitters' Training Fund, Local 597 ("Training Fund"), Pipe Fitters' Individual Account & 401(k) Plan, Local 597 ("401(k) Plan"), Chicago Area Mechanical Contracting Industry Improvement Trust and Pipe Fitting Council of Greater Chicago (collectively, "Trust Funds"), and Pipe Fitters' Association, Local Union 597, U.A. ("Union")'s Motion for Summary Judgment against Defendants Diversified General Contractors, Inc. ("Diversified") and Melvin Armstrong ("Armstrong"). For the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

### I.    Compliance with Local Rule 56.1

Before delving into the facts, a few notes about compliance with the Local Rules. Local Rule 56.1 instructs parties on summary judgment procedures, including how to properly present facts to the Court.  It exists to streamline summary judgment.  For example, parties must file statements of facts distilling evidence into numbered paragraphs that cite to the record.  L.R. 56.1(d).  Local Rule 56.1(g) then requires parties' briefs to "cite directly to specific paragraphs in the Local Rule 56.1 statements or responses" when addressing facts.  "These rules are important for everyone.  They help the parties present their strongest case."  *Franklin v. Maximus, Inc.*, 2024 WL 5077767, at *1 (N.D. Ill. 2024).  They also help the Court "organiz[e] the evidence and identify[ ] disputed facts," negating the need to "scour the record."  *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633–34 (7th Cir. 2005).  "Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law," the Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."  *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004)). Whether to enforce Local Rule 56.1 strictly or overlook transgressions is a discretionary decision.  *Id.* at 887 (citing *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)).  This Court requires strict compliance with the Local Rules.

2

Defendants' summary judgment briefing and supporting materials contain numerous blatant violations of Local Rule 56.1, which significantly hampered the Court's review and adjudication of Plaintiffs' motion. For example, in their opposition brief, Defendants improperly cite directly to the record evidence rather than specific paragraphs of the Local Rule 56.1 statements of fact. To make matters worse, Defendants often cite to an entire exhibit, rather than specific page numbers. And where page numbers *are* included, they are to bates numbers rather than the actual pages of the exhibit.

"[W]here arguments presented in a summary judgment motion are fact-intensive, it is essential to the court's proper consideration of those arguments for the parties to brief their legal and factual positions with reference to the Local Rule 56.1 statements and responses and not to the record materials themselves." *Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 666–67 (N.D. Ill. 2015) (collecting cases); *see also FirstMerit Bank, N.A. v. 2200 N. Ashland, LLC*, 2014 WL 6065817, at *5 (N.D. Ill. 2014) ("FirstMerit defeats the purpose of Local Rule 56.1 by ignoring and not citing to its Local Rule 56.1 statement in its memorandum of law and, instead referring the Court to the raw underlying exhibits, affidavits, and deposition testimony. That is not how it is done. The Court should not have to read 11 exhibits to FirstMerit's Complaint and eight paragraphs of Snelson's affidavit to determine or even to confirm whether FirstMerit's statement is true. It should be able to go to FirstMerit's Local Rule 56.1 statement of facts and Defendants' responses to that statement to determine whether the

relevant facts are contested or uncontested."); *BI3 v. Hamor*, 2011 WL 1231156, at *2 (N.D. Ill. 2011) ("It also must be noted that in their analysis of the issues the parties failed to cite to the statements of fact required by Local Rule 56.1. Instead they cite directly to various pieces of the record, thus forcing the court to engage in a treasure hunt to discern whether the cited material is disputed. This practice diminishes the utility of the Local Rule 56.1 statements, which are intended to provide the court with a central repository of disputed and undisputed facts which support or detract from the motions for summary judgment."); *Shaw v. Klinkhamer*, 2005 WL 1651179, at *3 n.1 (N.D. Ill. 2005) ("It is unfair for either party to expect the court to spend hours cross-referencing every direct record citation improperly contained in the parties' summary judgment brief with those provided in their L.R. 56.1 Statement of Facts.") (cleaned up). The Court therefore disregards factual assertions in the briefing that cite directly to the record or are lacking citation. *See Gross v. Peoples Gas Light & Coke Co.*, 634 F. Supp. 3d 464, 475–76 (N.D. Ill. 2022) (disregarding factual assertions citing to summary judgment record); *Pursley v. City of Rockford*, 2024 WL 1050242, at *15 n.13 (N.D. Ill. 2024), *reconsideration denied*, 2024 WL 1521451 (N.D. Ill. 2024) (same); *Komaniecki v. Ill. Tool Works, Inc. Ret. Accumulation Plan*, 2023 WL 6198817, at *3 (N.D. Ill. 2023) (disregarding factual assertions in summary judgment briefing citing to the record or lacking citation); *Palmer v. City of Markham*, 2023 WL 11960561, at *2 (N.D. Ill. 2023) (striking summary judgment briefs for citing directly to the record and lacking citations).

4

Even more frustrating are Defendants' canned responses to Plaintiffs' Local Rule 56.1 statement of facts, many of which state that the fact is denied for the "reasons set forth in the responses to" Paragraphs 19 and 20, and that the responses to those paragraphs are "incorporated by reference." *See* Dkt. # 113, ¶¶ 21–37, 41–44.[1]  A party may not respond to a paragraph of a fact statement by citing to another fact statement; doing this "saves counsel time but offloads on the court the burden of identifying what is factually disputed and whether the dispute is material." *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1019 (N.D. Ill. 2018) (citing *Schlessinger v. Chi. Hous. Auth.*, 130 F. Supp. 3d 1226, 1228 (N.D. Ill. 2015)).  The Court disregards the cross-references in Defendants' responses to Plaintiffs' fact statements and considers only the remaining portion of the response.[2]  *See Komaniecki*, 2023 WL 6198817, at *3.

## II.    Factual Background

On February 2, 2022, Plaintiffs filed their Complaint against Diversified and Armstrong pursuant to 29 U.S.C. §§ 185, 1132, and 1145 for breach of an Area Agreement and an April 16, 2021 Settlement Agreement.  The Union is the bargaining representative of Diversified's pipefitter employees. Diversified is an HVAC mechanical contracting company based in Lansing, Illinois.  Armstrong is the owner

---

[1] For example, the responses to Paragraphs 21–23 and 25–26 merely state: "Disputed. Every single one of these findings are disputed for the reasons set forth in response to ¶¶ 19 and 20 above.  The responses to ¶¶ 19 and 20 above are incorporated by reference."  Dkt. # 113, ¶¶ 21–23, 25–26.

[2] Paragraphs 21–23 and 25–26 are deemed admitted, as they provide no reason for the denial other than "for the reasons set forth in response to ¶¶ 19 and 20 above."

and President of Diversified.

Since October 20, 2005, Diversified has been signatory to a Subscription Agreement whereby it agreed to be bound by the provisions of an Area Agreement negotiated between the Union and the Mechanical Contractors Association ("Area Agreement"). Through the Subscription Agreement and the Area Agreement, Diversified became bound by the provisions of the Agreements and Declarations of Trust ("Trust Agreements") which created the Trust Funds. Pursuant to the provisions of the Area Agreement, signatory contractors are required to make monthly reports of hours worked by their pipefitter employees and pay contributions to the Trust Funds for each hour worked within the trade and territorial jurisdictions of the Union at the negotiated rates. Signatory contractors are also required to deduct union dues from their pipefitter employees' paychecks and remit payment of those dues to the Union. Diversified is required to deduct 401(k) elective deferrals from its employees' paychecks and remit payment of those deferrals to the Trust Funds pursuant to the Area Agreement and at the direction of each employee.

According to Plaintiffs, the Area Agreement requires employers to report every hire and termination to the Union. Defendants dispute that employers must report *every* hire and instead contend that they are only required to report on pipefitters. Plaintiffs further contend that under the Agreements, employers that fail to report every hire and every termination to the Union within the required amount of time will be charged a fine in the amount of $1.00 per employee, per day payable in the form of a "Referral

6

Hall Fine" to the Training Fund. Defendants dispute that this applies to all employees regardless of whether they are pipefitters and doing pipefitter work. In their view, the Agreements only relate to bargaining unit employees

Under the Area and Trust Agreements, employers who fail to remit their monthly reports and contributions to the Trust Funds on a timely basis are responsible for the payment of liquidated damages equal to ten percent (10%) of the amount of unpaid contributions and interest at the rate of one percent (1%) per month for each month that contributions remain unpaid, plus any reasonable attorneys' fees and costs.

Especially pertinent to this case, the Trust Agreements provide that every employer shall, when so required by the Trustees, furnish such information and reports as may be necessary for the proper performance of their duties. The Trust Agreements define such information to include all books, records, papers, and reports necessary in determining the number of hours worked by any/all employees for whom contributions should be made.

On April 16, 2021, the Trust Funds and Union entered into a Settlement Agreement with Diversified and Armstrong to resolve Diversified's remaining unpaid amounts on an Installment Payment Agreement from April 2019, unpaid Referral Hall Fines, liquidated damages, and attorneys' fees and costs. Armstrong signed the Settlement Agreement as President of Diversified and in his personal capacity. Armstrong agreed to be held personally liable for all of Diversified's ongoing contributions, liquidated damages, interest, attorneys' fees and costs, and audit

7

deficiencies that may become due and owing during the duration of the Settlement Agreement.

The Trust Funds and Union engaged the accounting firm Legacy Professionals LLP ("Legacy") to review Defendants' compliance with its obligations under the Area Agreement. James Kemperas of Legacy completed a payroll compliance audit of Diversified's books and records for the period of March 1, 2018, through March 17, 2022 (the "Audit"). Kemperas is not a CPA, and the Audit was not conducted using Generally Accepted Accounting Principles ("GAAP"), Generally Accepted Auditing Standards ("GAAS"), or the rules of the Financial Accounting Standards Board ("FASB"); however, there is nothing in the record that requires the Audit to be conducted in accordance with any of these principles. Kemperas has been an auditor for fringe benefit funds for almost 30 years, and he has specifically been doing audits for the Pipe Fitters' Local 597 for 10 or 11 years.

Due to insufficient documentation, some of Kemperas's findings were based, in part, on several assumptions as summarized in the Audit Report. The following is a summary of the Audit findings. Defendants object to the Audit in its entirety and dispute all its findings.

The Audit included deficiencies under seven different categories, defined by Legacy as follows:

| Category Code: | Description of Code: | Contributions, 401(k) Elective Deferrals & Dues Deficiency: |
|---|---|---|
| A | Not all payroll hours/401k reported | $13,440.11 |
| B | Member paid by Zelle transfer | $2,810.69 |
| C | Zelle payments to individuals no invoices provided | |
| D | Subcontractor payments with no name listed | $53,961.95 |
| E | Unidentified Individuals in payroll | $196,496.57 |
| F | Payments through disbursements | $3,859.38 |
| G | Subcontractor/Supplier no invoice provided | $122,641.40 |
| | **Total:** | **$393,210.10** |

Dkt. # 101, ¶ 20.

As to Category A, the Audit revealed that Diversified failed to report all payroll hours and 401(k) elective deferrals to the Trust Funds, resulting in a contributions, dues, and 401(k) elective deferrals deficiency in the amount of $13,440.11 in connection with Andre Brown, Benjamin Rodriguez, Timothy Boyle, Eugene Evans, Jr., Gerald Hall, Frederic Owens, Jathan Milam, David Thompson, Gregory Litterio, Richard Flanigan, and Brett Sparks, as detailed below:

| Payee: | Work Month: | Underreported Hours: | Total Benefit Package & Dues: | Resulting Contributions, Dues & 401(k) Deficiency: |
|---|---|---|---|---|
| Andre Brown | May 2018 | 4 | $31.38 | $125.52 |
| Benjamin Rodriguez | May 2018 | 40 | $31.38 | $1,255.20 |
| Timothy Boyle | May 2018 | 88 | $31.38 | $2,761.44 |
| Eugene Evans, Jr. | Jul. 2018 | 126 | $32.50 | $4,095.00 |
| Benjamin Rodriguez | Jul. 2018 | 32 | $32.50 | $1,040.00 |
| Gerald Hall | Aug. 2018 | 16 | $32.50 | $520.00 |
| Eugene Evans, Jr. | Sept. 2018 | 0.5 | $32.50 | $16.25 |
| Gerald Hall | Nov. 2018 | -26 | $32.50 | -$845.00 |
| Gerald Hall | Dec. 2018 | 1 | $32.50 | $32.50 |
| Gerald Hall | Feb. 2019 | 3 | $32.50 | $97.50 |
| Andre Brown | Feb. 2019 | 4 | $32.50 | $130.00 |
| Frederick Owens | Feb. 2019 | 3 | $32.50 | $97.50 |

| | | | | |
|---|---|---|---|---|
| Gerald Hall | Mar. 2019 | 20 | $32.50 | $650.00 |
| Jathan Milam | Jun. 2019 | 401(k) Elective Deferrals | N/A | $428.54 |
| David Thompson | Sept. 2019 | 401(k) Elective Deferrals | N/A | $79.36 |
| Gerald Hall | Sept. 2019 | 2.5 | $34.17 | $85.43 |
| Gregory Litterio | Sept. 2019 | 8 | $34.17 | $273.36 |
| Richard Flanigan | Sept. 2019 | 8 | $34.17 | $273.36 |
| Brett Sparks | Sept. 2019 | 48 | $34.17 | $642.72 |
| Jathan Milam | Aug. 2020 | 401(k) Elective Deferrals | N/A | $95.23 |
| Jathan Milam | Aug. 2020 | 16 | $36.05 | $576.80 |
| Andre Brown | Jan. 2021 | 10 | $36.05 | $360.50 |
| Andre Brown | Mar. 2021 | 18 | $36.05 | $648.90 |
| | | | **Total:** | **$13,440.11** |

Dkt. # 101, ¶ 24.

As to Categories B and C, the Audit revealed that Diversified made payments to Andre Brown, Girard Jenkins, and "Rodney" via Zelle. Kemperas determined that the payments made to individuals via Zelle resulted in a contributions and dues deficiency in the amount of $2,810.69 by multiplying the computed hours by the total benefit package (including Union dues) in effect at the time the payment was made, as detailed below:

| Payee: | Date of Payment: | Amount of Payment: | Resulting Hours Owed: | Total Benefit Package & Dues: | Resulting Contributions and Dues Deficiency: |
|---|---|---|---|---|---|
| Andre Brown | 5/24/2021 | $200.00 | 4.00 | $36.05 | $144.20 |
| Girard Jenkins | 6/16/2021 | $500.00 | 9.50 | $37.82 | $359.29 |
| Rodney | 5/24/2021 | $1,940.00 | 38.00 | $36.05 | $1,369.90 |
| Rodney | 5/24/2021 | $100.00 | 2.00 | $36.05 | $72.10 |
| Rodney | 5/28/2021 | $1,204.97 | 24.00 | $36.05 | $865.20 |
| | | | | **Total:** | **$2,810.69** |

Dkt. # 101, ¶ 27.

As to Category D, the Audit revealed that Diversified made payments via check without any payee listed. Kemperas determined that the payments via check without any payee listed resulted in a contributions and dues deficiency in the amount of

10

$53,961.95 by multiplying the computed hours by the total benefit package (including Union dues) in effect at the time the payment was made, as detailed below:

| Check No.: | Date of Payment: | Amount of Payment: | Resulting Hours Owed: | Total Benefit Package & Dues: | Resulting Contributions and Dues Deficiency: |
|---|---|---|---|---|---|
| 6842 | 3/11/21 | $5,000.00 | 58.25 | $36.05 | $2,099.91 |
| 6855 | 5/4/21 | $32,474.57 | 378.50 | $36.05 | $13,644.93 |
| 6873 | 6/3/21 | $2,518.51 | 28.50 | $37.82 | $1,077.87 |
| 6889 | 6/9/21 | $10,000.00 | 112.50 | $37.82 | $4,254.75 |
| 6887 | 6/21/21 | $17,310.00 | 195.00 | $37.82 | $7,374.90 |
| 6886 | 6/22/21 | $45,000.00 | 507.00 | $37.82 | $19,174.74 |
| 6897 | 6/23/21 | $4,000.00 | 45.00 | $37.82 | $1,701.90 |
| 6884 | 6/24/21 | $7,292.52 | 82.00 | $37.82 | $3,101.24 |
| 6885 | 6/24/21 | $3,591.41 | 40.50 | $37.82 | $1,531.71 |
| | | | | **Total:** | **$53,961.95** |

Dkt. # 101, ¶ 30.

As to Category E, the Audit revealed that Diversified paid hourly wages to individuals for which it had not previously reported to the Trust Funds and Union. Kemperas calculated a contributions and dues deficiency by multiplying the unreported hours for those individuals by the total benefit package (including Union dues) in effect at the time the unreported hours were worked. Based on this calculation, Kemperas determined that the unreported hours resulted in a contributions and dues deficiency in the amount of $196,496.57 in connection with Derrick Bush, Francisco Avila, Kevin Singleton, Beau Kyburz, and Boguslaw Drozdowski, as detailed below:

| Payee: | Work Month: | Unreported Hours: | Total Benefit Package & Dues: | Resulting Contributions and Dues Deficiency: |
|---|---|---|---|---|
| Derrick Bush | Mar. 2018 | 35.50 | $31.38 | $1,113.99 |
| Derrick Bush | Apr. 2018 | 25.00 | $31.38 | $784.50 |
| Derrick Bush | May 2018 | 24.00 | $31.38 | $753.12 |
| Derrick Bush | Sept. 2018 | 18.00 | $32.50 | $585.00 |
| Derrick Bush | Oct. 2018 | 47.00 | $32.50 | $1,527.50 |
| Derrick Bush | Nov. 2018 | 119.00 | $32.50 | $3,867.50 |

| Derrick Bush | Dec. 2018 | 95.50 | $32.50 | $3,103.75 |
| Derrick Bush | Jan. 2019 | 79.00 | $32.50 | $2,567.50 |
| Derrick Bush | Feb. 2019 | 95.50 | $32.50 | $3,103.75 |
| Derrick Bush | Mar. 2019 | 85.50 | $32.50 | $2,778.75 |
| Derrick Bush | Apr. 2019 | 120.00 | $32.50 | $3,900.00 |
| Derrick Bush | May 2019 | 152.50 | $32.50 | $4,956.25 |
| Derrick Bush | Jun. 2019 | 66.25 | $34.17 | $2,263.76 |
| Derrick Bush | Jul. 2019 | 134.00 | $34.17 | $4,578.78 |
| Derrick Bush | Aug. 2019 | 87.50 | $34.17 | $2,989.88 |
| Derrick Bush | Sept. 2019 | 181.00 | $34.17 | $6,184.77 |
| Derrick Bush | Oct. 2019 | 64.00 | $34.17 | $2,186.88 |
| Derrick Bush | Nov. 2019 | 109.50 | $34.17 | $3,741.62 |
| Derrick Bush | Dec. 2019 | 50.00 | $34.17 | $1,708.50 |
| Derrick Bush | Jan. 2020 | 41.00 | $34.17 | $1,400.97 |
| Derrick Bush | Mar. 2020 | 5.50 | $34.17 | $187.94 |
| Derrick Bush | May 2020 | 40.00 | $34.17 | $1,366.80 |
| Avila Francisco | May 2020 | 60.00 | $34.17 | $2,050.20 |
| Derrick Bush | Jul. 2020 | 34.00 | $36.05 | $1,225.70 |
| Derrick Bush | Aug. 2020 | 40.00 | $36.05 | $1,442.00 |
| Derrick Bush | Sept. 2020 | 5.00 | $36.05 | $180.25 |
| Derrick Bush | Oct. 2020 | 40.00 | $36.05 | $1,442.00 |
| Derrick Bush | Nov. 2020 | 133.50 | $36.05 | $4,812.68 |
| Derrick Bush | Dec. 2020 | 129.00 | $36.05 | $4,650.45 |
| Derrick Bush | Jan. 2021 | 64.00 | $36.05 | $2,307.20 |
| Derrick Bush | Feb. 2021 | 101.00 | $36.05 | $3,641.05 |
| Derrick Bush | Mar. 2021 | 91.00 | $36.05 | $3,280.55 |
| Kevin Singleton | Mar. 2021 | 24.00 | $36.05 | $865.20 |
| Derrick Bush | Apr. 2021 | 198.00 | $36.05 | $7,137.90 |
| Kevin Singleton | Apr. 2021 | 145.50 | $36.05 | $5,245.28 |
| Derrick Bush | May 2021 | 108.50 | $36.05 | $3,911.43 |
| Kevin Singleton | May 2021 | 54.00 | $36.05 | $1,946.70 |
| Derrick Bush | Jun. 2021 | 126.50 | $37.82 | $4,784.23 |
| Kevin Singleton | Jun. 2021 | 85.00 | $37.82 | $3,214.70 |
| Derrick Bush | Jul. 2021 | 169.00 | $37.82 | $6,391.58 |
| Kevin Singleton | Jul. 2021 | 163.50 | $37.82 | $6,183.57 |
| Derrick Bush | Aug. 2021 | 112.00 | $37.82 | $4,235.84 |
| Kevin Singleton | Aug. 2021 | 96.00 | $37.82 | $3,630.72 |
| Derrick Bush | Sept. 2021 | 103.50 | $37.82 | $3,914.37 |
| Kevin Singleton | Sept. 2021 | 103.50 | $37.82 | $3,914.37 |
| Derrick Bush | Oct. 2021 | 74.80 | $37.82 | $2,828.94 |
| Kevin Singleton | Oct. 2021 | 70.80 | $37.82 | $2,677.66 |
| Beau Kyburz | Oct. 2021 | 13.00 | $37.82 | $491.66 |
| Derrick Bush | Nov. 2021 | 112.50 | $37.82 | $4,254.75 |
| Kevin Singleton | Nov. 2021 | 120.50 | $37.82 | $4,557.31 |
| Beau Kyburz | Nov. 2021 | 103.57 | $37.82 | $3,917.02 |
| Derrick Bush | Dec. 2021 | 91.50 | $37.82 | $3,460.53 |
| Kevin Singleton | Dec. 2021 | 105.00 | $37.82 | $3,971.10 |
| Beau Kyburz | Dec. 2021 | 78.50 | $37.82 | $2,968.87 |
| Derrick Bush | Jan. 2022 | 114.08 | $37.82 | $4,314.51 |
| Kevin Singleton | Feb. 2022 | 116.47 | $37.82 | $4,404.90 |
| Derrick Bush | Feb. 2022 | 148.30 | $37.82 | $5,608.71 |
| Kevin Singleton | Feb. 2022 | 166.50 | $37.82 | $6,297.03 |
| Derrick Bush | Mar. 2022 | 108.50 | $37.82 | $4,103.47 |

| Kevin Singleton | Mar. 2022 | 103.00 | $37.82 | $3,895.46 |
|---|---|---|---|---|
| Boguslaw Drozdowski | Mar. 2022 | 71.00 | $37.82 | $2,685.22 |
| | | | **Total:** | **$196,496.57** |

Dkt. # 101, ¶33.

As to Category F, the Audit revealed that Diversified made payments to Derrick Bush. Kemperas computed hours for the payments made to Derrick Bush by dividing the amount of each payment by the applicable wage rate in effect at the time the payment was made. Kemperas then calculated a contributions and dues deficiency by multiplying the computed hours related to payments made to Derrick Bush by the total benefit package (including Union dues) in effect at the time the payments to Derrick Bush were made. Based on this calculation, Kemperas determined that the payments made to Derrick Bush resulted in a contributions and dues deficiency in the amount of $3,859.38, as detailed below:

| Payee: | Date of Payment: | Amount of Payment: | Resulting Hours Owed: | Total Benefit Package & Dues: | Resulting Contributions and Dues Deficiency: |
|---|---|---|---|---|---|
| Derrick Bush | 1/14/2019 | $250.00 | 5.25 | $32.50 | $170.63 |
| Derrick Bush | 1/16/2019 | $5,500.00 | 113.50 | $32.50 | $3,688.75 |
| | | | | **Total:** | **$3,859.38** |

Dkt. # 101, ¶ 37.

As to Category G, the Audit revealed that Diversified made payments to several subcontractors without any supporting documentation to show what the payments were for. Defendants subsequently provided affidavits indicating that the payments made by Diversified to all but two of the subcontractors were for materials and not for subcontracted work. As to the two remaining subcontractors, Intelli-building and

13

Islandaire, Kemperas computed hours related to the payments made to Intelli-building and Islandaire by dividing the amount of each payment by the applicable total wage and benefit package in effect at the time the payments were made. Kemperas then calculated a contributions and dues deficiency by multiplying the computed hours related to the payments made to Intelli-building and Islandaire by the total benefit package (including Union dues) in effect at the time the payments to Intelli-building and Islandaire were made. Based on this calculation, Kemperas determined that the payments made to Intelli-building and Islandaire resulted in a contributions and dues deficiency in the amount of $122,641.40, as detailed below:

| Payee: | Date of Payment: | Amount of Payment: | Resulting Hours Owed: | Total Benefit Package & Dues: | Resulting Contributions and Dues Deficiency: |
|---|---|---|---|---|---|
| Intelli-building | 2/6/20 | $30,000.00 | 362.50 | $34.17 | $12,386.63 |
| Islandaire | 11/12/21 | $92,400.00 | 1040.75 | $37.82 | $39,361.17 |
| Islandaire | 11/18/21 | $92,400.00 | 1040.75 | $37.82 | $39,361.17 |
| Islandaire | 2/12/22 | $74,034.00 | 833.75 | $37.82 | $31,532.43 |
| | | | | **Total:** | **$122,641.40** |

Dkt. # 101, ¶ 43. Sworn testimony, however, establishes that Islandaire is a supplier; it did not do any pipefitting subcontractor work for Defendants. Intelli-building's President testified that Intelli-building supplies Diversified with parts and control equipment.

Plaintiffs assert that, as a result of its failure to pay contributions and dues as revealed by the Audit, Diversified is liable for liquidated damages in the amount of $39,258.95 and interest in the amount of $153,633.45. As a result of the unpaid 401(k) elective deferrals revealed by the Audit, Diversified is liable for 401(k) liquidated

damages of $60.31 and 401(k) interest of $346.17 through December 20, 2024. Plaintiffs also assert Diversified is obligated to pay the reasonable attorneys' fees. Defendants dispute all findings in the audit and assert that no benefits are owed.

## LEGAL STANDARD

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-

15

movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## DISCUSSION

It is often said, and bears repeating here, that summary judgment is the "put up or shut up" moment in a case. *E.g.*, *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."). ERISA obliges benefit plan fiduciaries like Plaintiffs to "hold[] employers to the full and prompt fulfillment of their contribution obligations." *Michels Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, 800 F.3d 411, 418 (7th Cir. 2015) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 574 (1985)). The principal complication to this case is Defendants' failure to keep records sufficient to permit Plaintiffs to ensure that all required contributions were made. Employers are required to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). Sufficient records must be "reliable," "contemporaneous," and "accurate." *Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264 (7th Cir. 2003); *Laborers' Pension Fund v. RES Env't Servs.*, 377 F.3d 735, 739 (7th Cir. 2004) (citation omitted). "One risk that fiduciaries must consider is that employers will maintain shoddy or nonexistent records, fail to make required contributions and then, when the fiduciary

16

comes knocking, rely on the absence of records to claim that nothing is owed." *Pipe Fitter's Ret. Fund, Local 597 v. J & B Mech. Inc.*, 2018 WL 3819112, at *2 (N.D. Ill. 2018).

But "an employer cannot escape liability 'by hiding behind his failure to keep records as statutorily required.'" *Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Struben*, 2009 WL 497393, at *11 (C.D. Ill. 2009) (quoting *Brick Masons Pension Tr. v. Indus. Fence & Supply Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988)). Thus, if a fund shows an employer's records are deficient and "produces an apparently sound accounting suggesting that money is owed," the Court applies a presumption in the fund's favor, unless the employer presents rebutting evidence. *Reinke Insulation Co.*, 347 F.3d at 264–65 (7th Cir. 2003); *J & B Mech. Inc.*, 2018 WL 3819112, at *2.

## I.     Admissibility of the Audit Report and Related Declarations

Defendants devote a substantial portion of their Response to challenging the admissibility and reliability of the Audit Report, as well as the Kemperas and Vellenga declarations supporting the findings.

Defendants first contend that the Audit Report was "prepared for litigation purposes only, so it is not a business record, and it relies on assumptions and extrapolations from a 'captive auditor' who is unqualified to make those assumptions, did nothing to verify them and is based on the existence or non-existence of records." Dkt. # 114, at 10. As an initial matter, Defendants have not directed the Court to anything suggesting that the audit must be completed by a CPA, be "certified," or be

specifically conducted in accordance with certain accounting principles. Furthermore, Defendants' argument that the Audit Report is inadmissible hearsay has been addressed and rejected by the Seventh Circuit. *See Trs. of the Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 901 (7th Cir. 2009). Similar to this case, *Cork* was an action to collect contributions owed to employee benefit plans involving an employer that did not keep proper records, notwithstanding its contractual obligation to do so. Like here, the *Cork* auditor attempted to determine the extent of the employer's outstanding liability to the funds, applying a set of assumptions to the data available to him where necessary. The audit report was admitted at trial.

On appeal, the employer argued that the district court incorrectly admitted the audit report into evidence because it was founded on inadmissible hearsay. The employer also claimed that it could not otherwise be admissible as a business record because the report was prepared in anticipation of litigation. The Seventh Circuit found "no merit to this argument." *Id.* at 900. The court noted that auditors are often asked to analyze data based on a set of assumptions, and the assumptions in the *Cork* audit were not a secret; the auditor was deposed before trial about the nature of the assumptions, and the assumptions were, in fact, derived from what the employer's own records disclosed—or failed to disclose—about its methodology in reporting hours and making contributions. The court held that it was that evidence, not the content of any out-of-court communications, that led the trial judge to accept some

of the assumptions as accurate and to reject others as unsubstantiated. There was, therefore, no error in admitting the report simply because it reflected those assumptions.

The Seventh Circuit also concluded that the report "would in any event qualify for admission as a summary of voluminous business records—namely [the employer's] own payroll records." *Id.* at 901. The report "merely tabulate[d] data from" the employer's records "to show what the company might owe given certain assumptions." *Id.* The employer did not contend that either the underlying data or the auditor's calculations were inaccurate, the true quarrel was with the assumptions. And the assumptions the auditors applied to the data "were fully aired and their validity was assessed by the court based on the totality of the evidence." *Id.*

The same can be said for this case. Defendants do not dispute the accuracy of the data used or contend the calculations are incorrect. Rather, Defendants take issue with the assumptions the auditor applied to the data; their challenge is to the auditor's methodology. Defendants fault the auditor for not calling or sending letters to the workers picked up as pipefitters with unpaid benefits and not contacting the suppliers picked up as non-union subcontractors. But the auditor testified that he requested foreign union reporting forms and other documentation from the company, which Defendants would not or could not provide. It is Defendants' obligation to keep accurate books and records. The fact that assumptions had to be made because Defendants' records were inadequate does not warrant a rejection of the auditor's findings. *See Trs. of Chi. Plastering Inst. Pension Fund v. R.G. Const. Servs., Inc.*,

2009 WL 1733036, at *11 (N.D. Ill. 2009). Rather, "[t]o the extent defendants claim the auditor's assumptions were incorrect they can only blame themselves for not keeping adequate records." *Boudreau v. Gentile*, 646 F. Supp. 2d 1016, 1026 (N.D. Ill. 2009). The Audit Report is admissible.

Defendants next assert that the declarations of both the Union President, Joseph Vallenga, and the auditor are inadmissible because they rely on hearsay and do not fall under any recognized exception. Defendants contend that "[t]here is no affidavit from a partner at the auditing firm explaining how the audit was done, what assumptions they used other than to pick everything up, and what other assumptions or procedures they were supposed to rely on at the direction of the funds." Dkt. # 114, at 15. In the Court's view, the Kemperas declaration addresses these concerns.

As for the Vallenga Declaration, Defendants assert that it is not based on personal knowledge, but have not provided any explanation as to why the information in the declaration—liquidated damages, 401(k) deferrals, and interest owed—is outside Vallenga's personal knowledge. And, as Plaintiffs point out, the portion of Defendants' Response attacking these declarations is rife with factual assertions not contained in the Local Rule 56.1 statements. As discussed above, the Court disregards unsupported factual assertions. Both the Kemperas and Vallenga declarations are admissible.

## II. The Audit Report's Findings

Having established the Audit Report's admissibility, the Court now evaluates each category of deficiencies in turn.

20

With respect to Category A, underreporting of payroll hours and 401(k) deferrals, Defendants have not come forth with any competent evidence showing that the Audit incorrectly found deficiencies related to: Andre Brown, Benjamin Rodriguez, Timothy Boyle, Gerald Hall, Frederick Owens, Jatham Milam, David Thompson, Gregory Litterio, and Richard Flanigan. Armstrong testified that Andre Brown was paid through Zelle but hasn't produced records to back that up. Defendants also contend Benjamin Rodriguez did sheet metal work and no pipefitting, but this assertion is contradicted by Armstrong's deposition testimony. *See* Dkt. # 101-5, at 52 (unsure whether Rodriguez did pipefitting or sheet metal work). And while Defendants claim benefits were paid for Timothy Boyle, Gerald Hall, Frederick Owens, Jatham Milam, David Thompson, Gregory Litterio, and Richard Flanigan, this contention is supported only by Armstrong's general testimony that all fringe benefits owed to these employees were paid on a timely basis; there are no records supporting this testimony. "General statements are insufficient to rebut plaintiffs' proffered accounting." *Laborers' Pension Fund v. R&W Clark Constr., Inc.*, 2021 WL 1172698, at *3 (N.D. Ill. 2021). Defendants admit these individuals are pipefitters. In the absence of any rebutting evidence from Defendants, summary judgment is granted with respect to the amounts owed in connection with the individuals in Category A.

With respect to Categories B and C, payments made by Zelle to Andre Brown, Girard Jenkins, and "Rodney," Defendants contend that Girard Jenkins is not a tradesman—he is a "suit and tie" who does consulting work for Diversified. Defendants

further assert that "Rodney" is not a pipefitter and not even an employee of Diversified; he works for Defendants as a handyman and also does cabinet work, painting, and caulking. Defendants argue that Armstrong provided foreign union reporting forms showing that benefits were paid and reported to other unions on men the auditor picked up as pipefitters, citing Defense Exhibit 13. But Defense Exhibit 13 shows nothing of the sort; it pertains to the subcontractor Islandaire. However, Armstrong's testimony about Girard Jenkins and the lack of even a last name for "Rodney" give the Court pause. Summary judgment is granted as to Andre Brown but denied as to the two other individuals.

As for Category D, payments via check without any payee listed, the auditor concluded that these payments resulted in a contributions and dues deficiency in the amount of $53,961.95. Although Defendants have not submitted any evidence identifying the payees, the Court concludes that the auditor's assumption that all of these payments should be included in the audit is not a reasonable one. More is required to connect these checks to unpaid benefits. Summary judgment is therefore denied as to the claimed amounts owed in Category D.

As for Category E, unidentified individuals in payroll, Armstrong testified that Francisco Avila is a union carpenter who only did carpentry work for Diversified, but Defendants have not supplied a foreign union reporting form to back this claim up. Armstrong also testified that Kevin Singleton was a driver for Diversified who did no other work. Again, there is no documentation or other evidence that supports this

testimony; however, in the Court's view, the auditor's assumption that these individuals must have performed covered work, is not a reasonable one. Additionally, Armstrong further testified that Derrick Bush, Beau Kyburz, and Boguslaw Drozdowski are members of Sheet Metal Workers Local 265 and only performed sheet metal work for Diversified. Defendants have provided sufficient records creating a genuine issue of material fact regarding whether benefits are owed in connection with these three individuals, who appear to be members of Sheet Metal Workers Local 265. Summary judgment is therefore denied as to the claimed amounts owed for Category E.

As for Category F, payments through disbursements, the Audit Report determined that two payments to Derrick Bush resulted in a deficiency of $3,859.38. Given the Court's conclusions about Derrick Bush above, summary judgment is denied as to the claimed amounts owed for Category F.

Lastly, as for Category G, subcontractors/suppliers with no invoice, Defendants have submitted an affidavit from Islandaire confirming that Islandaire was only a supplier and not a subcontractor and therefore no benefits are owed in connection with Islandaire. As for Intelli-building, Defendants provide an affidavit from the company's President stating that Intelli-building is a supplier to Diversified; it provides Diversified with parts and control equipment. While the affidavit isn't enough to conclusively establish no pipefitting work was performed, it does suffice to create a genuine issue of material fact as to whether benefits are owed in connection with Intelli-building. Summary judgment is denied as to the claimed amounts owed in Category G.

23

As a final note, "[a] party will be successful in opposing summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (citing *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000)). Defendants claim in their response to Plaintiffs' statement of facts that they produced over 1,328 pages of documents during discovery showing the benefits picked up by the audit are not owed. This may be true, but Defendants certainly haven't provided the Court with this evidence, and Armstrong's general denials are insufficient to stave off summary judgment. As far as the Court can tell, Defendants have only produced records relating to Derrick Bush, Beau Kyburz, Boguslaw Drozdowski, and Islandaire. The Court is not required to scour through more than a thousand pages of documents to come up with evidence to support Defendants' claims.

Accordingly, summary judgment is granted as to liability—under the Settlement Agreement, Armstrong is personally liable for any outstanding deficiencies. In terms of damages, Plaintiffs are entitled to partial summary judgment as set forth above because they have presented an "apparently sound accounting," and Defendants have failed to provide rebutting evidence. In the instances where the Court has identified a genuine factual dispute and denied summary judgment, the amount of reimbursement due is reserved for resolution at trial or, preferably, by the parties without the expense of litigating the question further.

24

The Court is neither an auditor nor an accountant; therefore, out of an abundance of caution, the parties shall submit an agreed statement as to the correct judgment amount based on the Court's rulings herein. The damages amount shall include unpaid contributions, interest, and liquidated damages. The Court defers ruling on attorneys' fees and costs until the conclusion of the case.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment [98] is granted in part and denied in part as set forth above. The parties shall submit an agreed statement as to the damages amount by 8/30/2025. A telephonic status hearing is set for 9/9/2025 @ 9:55 a.m. For the telephonic status hearing, parties are to use the following call-in number: 1-650-479-3207, access code 2300 000 6287 or with the following link https://us-courts.webex.com/meet/Judge_Kocorasilnd.uscourts.gov. When using the link, Counsel must type in their name when joining the call. Throughout the call, each speaker will be expected to identify themselves for the record before speaking.

It is so ordered.

Charles P. Kocoras
United States District Judge

Dated: 7/22/2025